## WOMACK, Appellant, v. NEW ORLEANS PUBLIC SERVICE INC.

(May 10, 1926. Opinion and Decree.)
(June 7, 1926. Rehearing Refused.)
(Oct. 5, 1926. Writs of Certiorari and Review Denied by Supreme Court.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Master and Servant —Par. 154, 159 (a).**

The compensation paid injured workmen under the compensation statute is

based upon disability and it is immaterial whether the injury alone, or in conjunction with a latent systemic infection, caused the disability.

2. **Louisiana Digest—Master and Servant —Par. 160 (j).**

Positive testimony will prevail over negative, consequently when a doctor, testifying as a medical expert gives his professional opinion to the effect that an injury to the inguinal glands can be caused by a strain and declares that he has seen fifteen cases of such injury originating in that manner his testimony must prevail over another medical expert who expresses the opinion that a strain does not and can not produce such injury.

Appeal from Civil District Court, Div. "C". Hon. E. K. Skinner, Judge.

Action by Harvey B. Womack against New Orleans Public Service Inc.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Habans & Coleman, of New Orleans, attorneys for plaintiff, appellant.

Benj. W. Kernan, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J.. Plaintiff alleges that he was injured in the course of his employment as motorman by the defendant street railway company. He sues for compensation at the rate of $13.00 per week for 100 weeks beginning April 9, 1925. His injuries are described in his petition as "an extensive enlargement and induration of the right inguinal glands, very apparent upon inspection and painful on pressure" and "an injury to his abdominal wall and a tendency to inguinal hernia".

He alleges that he was employed by the defendant after a thorough physical examination by a physician, in defendant's employ, who pronounced him fit for the duties of motorman and "that your petitioner was broken in for eighteen (18) days chiefly with pneumatic brakes, and later placed on a car operated by hand brakes; upon the second day of his run, while operating the hand brakes, he endeavored to stop the car quickly and, in pulling at the hand brakes, experienced a severe strain at which time he felt a severe pain in the right groin", and "that some time later your petitioner again strained himself while trying to stop the car quickly in an effort to avoid an accident".

The defense is in effect a general denial.

There was judgment for defendant and plaintiff has appealed.

The fact that plaintiff suffered from a physical disability substantially as he claims is not disputed. Nor is the amount of compensation asked questioned, assuming there is liability. The sole question is whether plaintiff was injured in the course of his employment? In maintaining the negative, defendant relies entirely upon the alleged impossibility of the accident happening in the manner stated. In other words the inguinal glands, it is said, can not be injured by a strain due to an effort to stop a street car with a hand brake. Plaintiff's condition defendant says is the result of an infection, a systemic infection becoming suddenly active and manifesting itself in this form. We are gradually becoming accustomed to the originally startling dogma of our brethren of the pill and scalpel to the effect that there often lurks in the human system, a source of evil, inert, inactive, dormant, and in that quiescent state, like the crouching jagaur, innocuous to our physical welfare—but when aroused to action by a trauma or shock, or other abnormal incident, a veritable juggernaut crushing in its path all the vital forces of the body and causing disease,

disaster and death. These evil forces, we are told, usually hide behind our teeth and tonsils where from day to day they "ripe and ripe". We understand this theory is now orthodox, and, we humbly make our confession of faith, but we venture the assertion that its progress in medical esteem is strewn with many innocent teeth and tonsils, the erstwhile property of our fellow citizens, as vicarious sacrifices upon the altar of medical science. However interesting this subject may be, it is of no consequence in compensation cases for recovery in such cases depends upon disability whether caused by the injury alone or in conjunction with a latent disease. Craft vs. Gulf Lumber Co., 151 La. 281, 91 South. 736; Hicks vs. Meridian Lumber Co., 152 La. 972, 94 South. 903.

Two physicians testify for plaintiff and two for defendant. We recognize that all doctors are not alike in learning skill or reputation, but we can not make invidious distinctions, therefore, unless the record discloses something to indicate that the opinion of one or more of them, like that of Papinian, should be preferred to the rest, we treat the statement of each medical expert with the same credulity. Consequently when Dr. Rudolph, for plaintiff, with whom Dr. LeBlanc concurs, tells us that the plaintiff Womack's condition could have been caused by a muscle strain and Dr. Wymer for defendant with whom Dr. Lyons concurs tells us it would not, we find the testimony on this point in balance. But when Dr. Rudolph adds "I have easily seen fifteen cases at least" caused by strain, the scales, by operation of the familiar rule concerning negative and positive testimony, begin to tip toward plaintiff. And, when Dr. Wymer testifies that he gave plaintiff "a rigid physical examination" before he, as examining physician for the defendant company, accepted him,

and, that he, Womack, did not have a weakened abdominal wall or infection at that time otherwise he would not have been employed the scales tip a little more, for we have the word of Dr. Wymer for it that so far as a rigid physical examination would reveal, Womack was in a normal physical condition when he entered defendant's employ. We have seen that the medical testimony preponderates in favor of the possibility of plaintiff's condition being due to a strain, and it is established that when he entered defendant's employ he was, as far as a rigid medical examination would disclose, a healthy man. We take no notice of potential systemic infection, for the reasons we have given. There remains for consideration the question of whether as a matter of fact plaintiff was injured in the course of his employment.

He testifies that in the early part of May while acting as motorman on a car of the Henry Clay line, in order to "make a sudden stop to avoid an accident and I gave a quick start that way and threw my weight against the brake which caused a strain in my side"; that about a day after this occurrence he experienced pains in his abdomen and in the glands of his leg; that he promptly reported his symptoms to Dr. Wymer, the defendant's doctor who told him it would amount to nothing; that he continued to work and on another occasion a few days later while operating a Coliseum car also equipped with a hand brake, "when I went to make a curve. It was after dark. I was going to this curve, and before I got to it, my conductor spoke to me, and I looked to take the curve and I threw my weight against the brakes to keep from hitting the curve"; that following this second incident he again experienced pain in the same locality and reported his injury to the barn foreman, a Mr. Van Mannen the next day. Peter Coste, the conductor on the Coliseum car, at the

time Womack claims to have received his second injury testifying for defendant said that as the car approached Webster street at full speed and as he did not hear the "power go off" he walked through the car and addressing Womack said "watch yourself, you are on that curve" and he (Womack) "threw the juice off and jammed the brake".

Van Mannen, the barn foreman testifying for defendant, said that Womack complained to him about his side being strained. He thinks the complaint was made "around the 23rd of May".

Charles Russel, who worked with Womack as a conductor on May 17th, testifying for defendant said that Womack "said to me that he didn't know how he was going to make out that evening as his side hurt him".

Our conclusion is that plaintiff has made out his case by a clear preponderance of the . testimony. His injury can be explained upon no other reasonable hypothesis, except in the manner he alleges. The judgment appealed from is for the reasons assigned reversed and it is now ordered that there be judgment in plaintiff's favor and against the defendant ordering the defendant to pay to plaintiff the sum · of $13.00 per week for 100 weeks beginning April 9, 1925, with interest at the rate of 5 per cent upon each weekly installment from its due date until paid and all costs.