(No. 5746.   December 8, 1931.)

MRS. R. REINOEHL, Appellant, v. HAMACHER POLE & LUMBER COMPANY and STATE INSURANCE FUND, Respondents.

[6 Pac. (2d) 860.]

Edward H. Berg and Williams & Cornelius, for Appellant.

Wm. M. Morgan, for Respondents.

VARIAN, J.—James Edward Pierce was employed as a swamper, by the Hamacher Pole & Lumber Company, at a camp about four miles from Rathdrum, Idaho. He went to work on March 22, 1930, worked around the camp two or three days, and then went into the woods, where his working hours were from 8 A. M. to 5 P. M. Lunch was brought, at noon each day, to the workmen, by servants of the employer, and the employees ate such lunch in the woods, returning each night to the camp. Wood ticks were very plentiful on the brush in the woods and fell upon Pierce and his fellow employees. While working it was not always noticed when a tick fell on a man, or when it bit him. On return to the camp, in the evening, it was customary for the men to strip and pick the ticks off each other and burn them. The camp was located in a five-acre clearing free of brush and ticks. All the men boarded and roomed in the bunkhouse at the camp, and while they were free to come and go as they pleased, after working hours, none of them left the camp at night. The evidence shows that wood ticks do not stay at camps, but infest the brush. Pierce was in Spokane from about March 1, 1930, until he went to work on the 22d. On April 3, 1930, he complained of having a headache and chills, but refused to go to a doctor. He did not get better, but worked through until Saturday night, April 5th, when he was taken to Spokane, where he put up at the Fernwood Hotel. A brother, staying at the Galax Hotel, called on him but was unable to procure a physician on Sunday. On Monday, April 7th, Pierce was taken, by his

brother, to St. Luke's Hospital, where he died, of Rocky Mountain spotted fever, on the morning of April 9, 1930. The doctor testified that he had many insect bites; which were reported by those having the care of the patient before he entered the hospital, as tick bites; that they conformed in every way to those produced by ticks; and that his opinion was that they were tick bites.

The Industrial Accident Board found the facts substantially as stated; that Pierce died of Rocky Mountain spotted fever; "that said spotted fever was the result of a tick bite or bites"; and that his death was not "the result of a personal injury by accident arising out of and in the course of his employment." On appeal, without any further testimony being taken, the district court found, in addition to the board findings, "That said spotted fever was the result of a tick bite or bites received by said James Edward Pierce in the course of his employment, and while employed as a 'swamper,' as set forth in paragraph 3 of the findings." The district court further found:

"(7) That there remains but one other question, and that is whether a tick-bite can be termed an *accident*. Taking the ordinary meaning of the word 'accident,' we are unable to find that a 'tick-bite' is an *accident*."

The district court entered judgment, sustaining the board's order, dismissing the proceeding; from which judgment claimant appeals to this court.

Two questions are presented by this appeal: (1) "Is there sufficient evidence to justify the finding of the district judge that tick-bite or bites were 'received by said James Edward Pierce in the course of his employment, and while employed as a "swamper," as set forth in paragraph 3 of the findings,' and, if the evidence is sufficient in that particular," (2) is a tick bite, from which Rocky Mountain spotted fever ensues, an "accident" within the meaning of the Workmen's Compensation Act?

Under the facts disclosed by this record we think the finding that Pierce's injury occurred in the course of his. employment was justified.

The second question is one of first impression in this court and we have been cited to no report, of any appellate court, nor have we been able to find any case, involving tick bite and resulting Rocky Mountain spotted fever. However, the Idaho Industrial Accident Board, on stipulated facts, held that an employee who was incapacitated, for a period, by Rocky Mountain spotted fever, following a sage-tick bite, was not "injured by accident" within the purview of our statute, and denied compensation. (*Smith v. Robertson*, 3 Rep. Idaho I. A. B. 224.)

The following code sections are applicable to the matter under consideration:

"6217. If a workman receives personal injury by accident arising out of and in the course of any employment covered by this chapter his employer or the surety shall pay compensation in the amounts and to the person or persons hereinafter specified."

"6323. (As amended, Sess. Laws 1927, Chap. 106, sec. 20, p. 148.) 'Injury' or 'personal injury' includes death resulting from injury within two years after the accident but is not to be construed as being synonymous with accident. An 'injury' or 'personal injury' to be compensable must be the result of an accident."

"6324. The words 'personal injury by accident arising out of and in the course of such employment' shall include an injury caused by the wilful act of a third person directed against an employee because of his employment. They shall not include a disease except as it shall result from the injury."

In construing C. S., sec. 6323, as amended, *supra*, it was held that the amendment of 1927 is not "to be construed as denying compensation in all cases where a workman sustains an injury that is not preceded by slipping or falling or some like violent happening." (*In re Larson*, 48 Ida. 136, 142, 279 Pac. 1087.) This interpretation is in accord with the uniform holding of this court to the effect that the Workmen's Compensation Act is to be liberally construed and in such a manner "as to carry out its purposes and, so far as is reasonably possible, secure its benefits to all

those who were intended to receive them." (*McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 787, 203 Pac. 1068; *Flynn v. Carson*, 42 Ida. 141, 243 Pac. 818; *Aldrich v. Dole*, 43 Ida. 30, 249 Pac. 87; *In re Hillhouse*, 46 Ida. 730, 271 Pac. 459; *In re Larson, supra; Ramsay v. Sullivan Min. Co., post*, p. 366, 6 Pac. (2d) 856, decided December 8, 1931.)

In *McNeil v. Panhandle Lumber Co., supra*, the following definition of "accident" by Lord Macnaghten, in *Fenton v. Thorley*, (1903) App. Cas. 443, 72 L. J. K. B. 787, 89 L. T. 314, 52 W. R. 81, 19 T. L. R. 684, 5 W. C. C. 1, H. L., is laid down with approval:

" . . . . that the expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked-for mishap or an untoward event which is not expected or designed."

The court has approved the quoted definition in subsequent cases. (*Aldrich v. Dole, supra; Reader v. Milwaukee Lumber Co.*, 47 Ida. 380, 275 Pac. 1114; *In re Larson, supra; Ramsay v. Sullivan Min. Co., supra.*)

In *Aldrich v. Dole, supra*, at page 34, it was said:

"Although the cases may be said to be not in entire accord, a reading of the American and English decisions, construing statutes identical and similar to ours, indicates that the weight of authority is that a workman may be said to receive a personal injury by accident arising out of and in the course of his employment when, from the operation of known and usual causes, he receives an injury, neither expected nor designed." (Citing *McNeil v. Panhandle Lumber Co., supra.*)

"While an accident may be slight and the untoward circumstances meager, there must be some distinctive unexpected happening"; and "there must be a probable, and not merely a possible, connection between the cause and the effect." (*Croy v. McFarland-Brown Lumber Co., ante*, p. 32, 1 Pac. (2d) 189; *Hawkins v. Bonner County*, 46 Ida. 739, 271 Pac. 327; *In re Larson, supra; Larson v. Ohio Match Co.*, 49 Ida. 511, 289 Pac. 992.)

In a case under an accident policy, not involving the compensation law, where a traveling salesman was bitten on the foot by an insect, presumably a mosquito, from which blood poisoning ensued resulting in death, the supreme court of Kentucky held that his death was due to "external, violent, and accidental means" under the policy, saying:

" . . . . we are of the opinion that, as a matter of law, the death of the assured could be as truly said to have been effected through 'external, violent, and accidental means' as though death had been caused by the sudden, unforeseen, and unexpected bite of a poisonous snake. The bite was external, violent, and accidental . . . . It was also accidental, because unexpected, unforeseen, and happened as by chance. It was not designed or brought about voluntarily. But for it the blood poisoning and death would not have resulted. The blood poisoning was consequent on the wound; the bite would, therefore, be the proximate cause of the death." (*Omberg v. United States Mut. Acc. Assn.,* 101 Ky. 303, 72 Am. St. 413, 416, 40 S. W. 909.)

The uncontradicted testimony is to the effect that Rocky Mountain spotted fever is caused by the bite of a tick which carries and spreads the disease; that it is carried only by those ticks which have been infected with piroplasma riketsii, the organism which causes the fever; and that only ticks so infected can transmit the disease to man. The fever may be transmitted by other means than by tick bite, as in the case of persons working with infected materials in a laboratory, which was not the case here. Deceased is shown to have been bitten by ticks (and was not otherwise exposed to said disease) within the incubation period, which "is a more or less variable period; from two to twelve days, usually three to eight days; this depends entirely upon the virulence of the infecting agent, and the resistance of the individual infected, and the amount of virus injected." Not every tick bite is infectious, and, in many cases, such wounds do not result in, nor are they followed by, Rocky Mountain spotted fever.

As argued by the Earl of Halsbury, in an anthrax infection compensation case (*Brintons, Ltd., v. Turvey,* (1905)

App. Cas. 230, 71 L. K. J. B. 474, 92 L. T. 578, 53 W. R. 641, 21 T. L. R. 444, 49 Sol. Jo. 445, 7 W. C. C. 1, H. L.), ''Suppose in this case a tack or some poisoned substance had cut the skin and set up tetanus. Tetanus is a disease; but would anybody contend that there was not an accident causing damage?''

The tick bite, or bites, the injury, or injuries, that caused the Rocky Mountain spotted fever resulting in the workman's death in the instant case, was therefore an ''accident'' since it was, in the ordinary and popular sense of the term, an unlooked-for mishap which was neither expected nor designed. The fact that the accidental injury results in a disease does not alter the nature, or the consequential results, of such injury. (*Brintons v. Turvey, supra.*) We therefore hold that deceased received ''a personal injury by accident arising out of and in the course of his employment.''

Judgment reversed and cause remanded, with directions to the district court to order the Industrial Accident Board to modify its conclusions in accordance with the views above expressed and award appellant compensation. Costs to appellant.

Lee, C. J., and Budge, Givens and McNaughton, JJ., concur.