(No. 5976.   February 19, 1934.)

BERTHA BEAVER, Special Administratrix of the Estate of LEE OTIS BEAVER, Deceased, Appellant, v. MORRISON–KNUDSEN COMPANY, Employer, and STATE INSURANCE FUND, Surety, Respondents.

[41 Pac. (2d) 605.]

Laurel E. Elam and Carl A. Burke, for Appellant.

James H. Hawley, Jr., for Respondents.

John H. Wourms, Donald A. Callahan, Charles W. Beale, James E. Gyde and Ralph S. Nelson, *Amici Curiae*, on Rehearing.

BUDGE, C. J.—From a judgment of the district court affirming an award of the Industrial Accident Board in favor of the employer, Morrison-Knudsen Company, and the surety, State Insurance Fund, this appeal is prosecuted. Shortly after the hearing before the board the claimant, Lee Otis Beaver, died, and an order of substitution of Bertha Beaver, Special Administratrix of the Estate of Lee Otis Beaver, was duly made.

The facts are substantially as follows: At the time of the hearing before the Industrial Accident Board the claimant was thirty-two years of age. Prior to 1928 he had been a farmer in Arkansas, and, in 1923, had suffered from a condition evidenced by knots, bumps, knobs or nodules on his neck which were at that time diagnosed by a doctor as cancerous. There is evidence that claimant was suffering in 1923 from tuberculosis. In 1928 his tubercular condition was in an arrested or latent state. In June, 1928, claimant was first employed by Morrison-Knudsen Company, at which time he seemed to be in good physical condition, weighed between 150 and 160 pounds, and was able to carry on regular manual labor. There is evidence that his diet and eating habits were correct and that his living conditions were good. During 1928, 1929, 1930 and 1931 claimant worked for Morrison-Knudsen Company intermittently in various capacities, including truck driving, general work, repair work, rock-crusher work and hot plant work. During the time of his employment claimant performed labor at or upon the rock-crusher and hot plant three or four months in each of the years 1928, 1929 and 1930, when these units were operating, and for a short period in February, 1931, repairing the rock-crusher. When the rock-crusher and hot plant were operating thick clouds of dust were produced, in which the men were required to work, and which dust

penetrated their clothing, covered the exposed parts of their bodies, and the breathing of such dust caused the men to cough. This dust upon analysis was found to contain from 80 to 85 per cent silica. Claimant worked in such dust during the times he was so employed and was more or less bothered by coughing, which became more frequent as time passed. In February, 1931, claimant did repair work on the rock-crusher, which was consistently dusty work, and in February, 1931, his cough became worse and claimant started spitting up blood and black particles and lumps. After February claimant continued working for said company in 1931 but not upon the rock-crusher or hot plant, and, in July, 1931, while truck driving in Utah, suffered a hemorrhage and thereafter his weight fell off and continued to do so until October, 1931, at which time he weighed less than 135 pounds. In October, 1931, claimant returned to Boise and during that month consulted a physician, was placed in a hospital under observation and treatment, X-rays were taken of his chest and his case was diagnosed as ''acute tuberculosis.'' There is evidence that claimant suffered from no cold or any known illness during the time of his employment as above recited and that he had no knowledge that there was such a thing as silica dust or that there was any danger in working in rock dust. The foreman under whom he worked likewise had no knowledge of silica dust or any danger to anyone coming in contact therewith. Neither claimant nor anyone else realized that he was suffering from an arrested or latent case of tuberculosis until October or November, 1931. Notice of claim of injury was filled out and furnished to one Smith, foreman of said company, in November, 1931, and held up in the company's office for a considerable time, approximately a month.

It is suggested that there are two issues before the court upon this appeal: First, was there an accidental injury; and, second, did complainant comply with I. C. A., sec. 43–1205, which raises the question of notice to the employer. It is appellant's contention that claimant had an

arrested case of pulmonary tuberculosis and that his inhalation of silica dust during his employment on the rock-crusher and hot plant of the Morrison-Knudsen Company caused a series of irritations which lighted up his latent or arrested tuberculosis resulting in his illness, and ultimately in his death.

The findings of fact and rulings of law of the Industrial Accident Board are, in part, as follows:

"That at the date of hearing the Claimant . . . . was suffering from tuberculosis in an advanced stage; that the said claimant had contracted tuberculosis earlier in his life-time and long prior to the time of his first employment with the above said employer, and that the present attack of tuberculosis is a reoccurrence of the disease . . . . that the same was not caused by his employment; . . . . and there is no connection between it and the occupation which Claimant pursued for his employer . . . . that the Claimant has failed to show that his illness was caused by any accident arising out of or in the course of his employment with the Morrison-Knudsen Company."

The first question presented is whether or not there was sufficient competent evidence to support the board's findings. (*In re Larson,* 48 Ida. 136 279 Pac. 1087.) Certain facts are established, namely: In 1928, when claimant started work for Morrison-Knudsen Company, he had an arrested case of tuberculosis but was a strong and healthy man at and prior to such time. In October, 1931, he had "active tuberculosis" in an advanced and incurable stage. The dust in which claimant worked and which he breathed for three or four months during each of the years 1928, 1929, 1930 and in February, 1931, contained 80 to 85 per cent silica. The question is therefore squarely presented: Did the inhalation of silica dust precipitate or lighten up claimant's tuberculosis and, if so, was it an accident? Dr. Stallings, a tuberculosis specialist, testified, among other things, that he examined claimant in November, 1931, and had had him under observation for some time and found that he had an

advanced pulmonary tuberculosis and was hopelessly ill. Further, he was asked the following hypothetical question:

"Q. Now assume, doctor, that Lee Otis Beaver is a man 32 years of age at this time; that prior to 1928 he was a farmer in Arkansas; that he had typhoid fever at the age of 15 years and that he had glandular trouble in 1923 as follows: That the glands on the left side of his neck were swollen and there were three or four bumps on the left side of his neck a little larger than your thumb, at which time he was somewhat ill and saw a doctor, and that the doctor diagnosed the case as probably cancer but that the same was not operated on; that he has stub finger nails or turned down finger nails; that he came to Idaho in 1928 in apparent good health and weighed approximately 150 pounds; that he started work for Morrison-Knudsen Company upon arrival in Idaho and worked about ten months each year at road work, odd jobs, repairing machinery, in a rock crusher and hot plant; that his work in the rock crusher and the hot plant was approximately as follows: In 1928 about four to five months, in 1929 from three to five months, in 1930 from five to six months, and that he worked about the crusher in dust again in February, 1931, and that when he worked in and about the rock crusher and the hot plant he worked in a very heavy and thick dust consisting partly of small rock particles or rock dust; that this dust at times was very thick and one could see very indistinctly through the dust; that the dust was so thick that the men working at the rock crusher, and the claimant working at the rock crusher and hot plant, were completely covered with dust, which was so penetrating that it went through their garments and covered their bodies as well as the portion of the body which had no clothing; analysis shows that such rock dust in which he was working contained quite a large percentage of silica; that during 1928, 1929 and 1930 he was able to carry on his work and had sufficient vitality so that he could work longer than his regular shifts of eight hours if necessary; that the

work in 1930 was finished during the month of November and up to that time he had a cough when working in the dust, which gradually grew worse; that at first his cough was about the same as the other men who would be working in the dust but gradually grew somewhat worse; that when he started working in the hot plant and rock crusher in February, 1931, working in and about the hot plant and rock crusher in February, 1931, he had no apparent cold; that the dust at the time caused him to cough very violently; that he coughed up black chunks and then began to spit blood; that at the time he became weak and was of the opinion that possibly he had the ''flu''; that he did not work any more except for a day or two at a time until May, 1931, at which time he went to Utah with Morrison-Knudsen and fired a boiler and drove a truck on the construction of a new road; that he breathed considerable dust off the road and rock in driving the truck on this work and also in firing the boiler; that he suffered a hemorrhage in either June or July, 1931; that between the dates of February 1, 1931, and October 1, 1931, his weight dropped from approximately 150 pounds to approximately 125 pounds; that he became weaker during the year 1931; was unable to eat very much and was scarcely able to keep at work; that he came home in October, 1931, and was thereupon examined by Dr. Boeck and was also examined by you,—now, assuming the above facts and also taking into consideration what you observed about him and your examination and the observation of him which you have made since that time, state what your opinion is as to the cause of his present condition. . . . .

''A. I would like to qualify that before I answer. There is nothing said about silica.

''Q. This is assuming the fact that there is a rather high percentage of silica in the dust.''

Dr. Stallings answered:

''I think his present condition is due to his occupation, his working in this stone crusher and hot plant. . . . .

"Q. Explain what you mean by that a little more fully as to the effect of working there in that dust.

"A. *We know there is but one form of dust that is injurious to the lungs, that is really injurious.* Some of the organic substances will give you bronchitis, but it does not cause real lung damage. There is just one chemical that causes real lung damage, *and that is silica.* Silica is an ingredient of hard rock mines, quartz, and stuff that we get the precious metals out of; it is an ingredient of limestone, granite and various forms of rock, and we know further that people who have been exposed to this type of dust are exceptionally prone to develop tuberculosis. That is a known fact. It is established by various authorities. I think in this particular case this man,—I might say further it usually takes from 3½ to 15 years for a man to develop symptoms of silicosis under ordinary conditions. The ordinary man will work in a mine for a good many years and seldom develops the disease, but when a man has had tuberculosis it is a different story. He may suffer with a very sudden acute tuberculosis, and I think that this man did have that. I think he had manifestations of active tuberculosis prior to the time that he went on the job, and when he came into a silicious atmosphere that contained a high percentage of silica I think it overwhelmed him and he blew up. I think that is about the only way I can answer that.

"Q. What would you say as to your opinion as to the effect of this silica dust or rock dust coming in contact with the tubercules there in his lung? . . . .

"A. That silica is slightly soluble in the lung, and it causes a coal-oil silica. That is a very good medium for the development of tubercular bacilli. It is a tissue poison, and I think it broke down the tubercules that were healed in there, and the boy just went out. That is the way I feel about it. That is my opinion. . . . .

"Q. That the inhalation of rock dust gives the media upon which these bacilli could develop?

"A. Yes. . . . .

"A. . . . . I tell you this case is an unusual case, . . . . This man, . . . . who could work in October, . . . . came to me hopelessly ill six weeks later;—that is an unusual thing. As a rule you see these men go out gradually . . . . He got his tuberculosis with cavity in February, and in October he was far advanced and hopelessly ill, but he had that period of seven or eight months that he was not so sick but what he could work. The thing blew up, all to pieces at once. . . . .

"Q. You feel then that it was the action of these rock particles in connection with these tubercules which were already in his lungs, there in the arrested state, which caused the difficulty in this man? . . . .

"A. That is my opinion that it is."

Dr. Stewart, witness for claimant, was asked a hypothetical question including the elements contained in the question asked Dr. Stallings, heretofore quoted, with the further element that the rock dust in which claimant worked contained 80 to 85 per cent silica, and he answered as follows:

"Q. . . . . Now, assuming the above facts to be true and also taking into consideration what you observed of him upon your examination and your observation of him, state what in your opinion is the cause of his present condition.

"A. Well, I would say pulmonary tuberculosis precipitated by the inhalation of the silicious dust in which he worked. . . . .

"Q. And would you say in your opinion that that condition and the inhaling of dust and the present condition have any connection?

"A. Yes, the presence of a latent tuberculosis or an arrested tuberculosis . . . . could be very easily lighted up by a series of irritations such as described, in this silicious dust.

"Q. And in your opinion would such a result come about without some cause such as the dust, silicious dust, or something of that sort?

"A. Well, I wold say that such a thing might come about, but where you have a direct operating cause of that character there would be no reason for assuming that some other cause had come in at all. I don't know of any other thing that would precipitate it."

On cross-examination Dr. Stewart made the following answers:

"Q. Doctor, from your observation and information relative to this case, would you say positively that the man's condition today is the result of his employment on the rock crusher and hot plant?

"A. Yes, I think so.

"Q. Positively?

"A. Yes, as far as I have the history."

Dr. Boeck, who examined, observed and treated claimant in 1931, and who diagnosed his case then as tuberculosis, was asked questions as follows:

"Q. You heard the hypothetical question which I asked Dr. Stewart, and I will ask you to state after listening to that same question and also taking into consideration what you observed yourself as to his condition when you first saw him and what you have seen of him since, taking into consideration all of those matters. I will ask you to state what your opinion is as to the cause of his present condition.

"A. I felt after taking into consideration all the findings and the history, which I went into thoroughly, that he had had a latent tuberculosis which had been flared up by his work in this dusty condition. . . . .

"Q. What would you say as to the tendency of such a thing as violent coughing itself toward breaking these tubercules open?

"A. It is positive. . . . .

"Q. Well, when sharp particles are in there, in the spaces where your walls come together, what would be your conclusion as to what would happen?

"A. Irritation.

"Q. And the cutting of the tissues by the rock?

"A. Yes, yes.

"Q. Now, in your opinion is that what happened in this case here?

"A. That is my opinion, yes.

"Q. State your opinions as to whether or not the action of these rock particles is what caused the latent tubercules to open up and free the tubercular germs.

"A. I felt that this irritation that he had from this dust is what was the underlying cause of his flareup, so to speak, of this old tubercular condition."

Dr. Pittenger, a witness for respondents, who testified he examined claimant one day before, was asked the following hypothetical question:

"Q. Now, doctor, . . . . Assume a man, claimant here, 32 years of age, having been in Idaho since 1928, prior to that time having lived in Arkansas and having done ranch work, and in the year 1923 having developed a difficulty evidenced by lumps on the side of his neck, which at that time the doctor consulted stated that he thought were cancerous but which nothing was done by the way of an operation, and that since that time his neck has from time to time bothered him some and at the present time there is still some swelling there, and in 1928 he having begun to work for the Morrison-Knudsen Company, working on what is known as the hot plant and the gravel plant located here in Boise, and having in 1928 worked some three or four months on a gravel plant located on Sheep Creek some twelve miles east of Boise on the Boise River; in 1929 having been employed in the months of May to November, approximately 136 days; in the year 1930 having been employed, that is, on the gravel plant and the hot plant, for approximately 109 days, and in February of 1931 having

done some work in and around the rock crusher and hot plant when it was not operating that is the last day on which he did this work around the rock crusher being February 23, 1931, and having since then carried on the occupation of truck driver and other manual labor and in the course of his occupation and work on this rock crusher and hot plant having been called upon at numerous times to perform overtime, one time having performed a double shift, and having taken ill, having first consulted a doctor, namely, Dr. Boeck, October 4th, and having been diagnosed at that time as active tuberculosis and his disease having continued until the time of your examination,—I will ask you, doctor, in your opinion to state whether or not his occupation on the gravel plant and rock crusher can be said to be solely responsible for his present condition?

"A. No.

"Q. I will ask you if his present condition is probably connected with his work on the rock crusher and hot plant?

"A. Not necessarily. Hard labor of any kind would produce the same effect, regardless of what it was, . . . .

"Q. . . . . I will ask you if in your opinion there was a possibility of the recurrence of this tuberculosis in Mr. Beaver having been caused from some other cause than his inhalation of rock particles during his work at the plant?

"A. Yes.

"Q. And what possibility is there of other causes in his case?

"A. Well, from his history I think he had tuberculosis prior to this time, and in the natural course of events *a man doing labor who has previously had an arrested case of tuberculosis, doing labor of the type this man did, practically always will set up an active tuberculosis,* regardless of the occupation. Another thing, *there are certain definite symptoms that are produced by irritation of dust particles* that always occur before development of tuberculosis. There is bronchitis, or asthma, or, as we call it, chalicosis,

always developed, because there has to be a history of a long period of irritation of the bronchi, and I believe there are authorities that question it even being a cause of tuberculosis. . . . .

"Q. When in your opinion if this man had breathed in rock particles and tuberculosis have been lighted up from that cause, *would it have shown prior to,* we will say, February, of 1931?

"A. Well, I wouldn't say that necessarily. Of course, there would have to be a beginning and that might have been the beginning of his tuberculosis. I couldn't say. That is his first symptoms and his complaint, so that we will have to assume that that was the beginning of it."

Dr. Stone, witness for respondents, was asked almost the same hypothetical question as that propounded to Dr. Pittenger, except that "rock plant" was used in the place of "gravel plant," and he answered:

"Q. . . . . I will ask you in view of the facts set forth in that question and your examination if you can say positively that Mr. Beaver's present condition is chargeable to his having inhaled *rock particles* in the course of his employment with Morrison-Knudsen Company?

"A. I cannot.

"Q. Can you say that his present condition was probably caused by his occupation?

"A. No. I don't feel that it necessarily follows the occupation at all. . . . .

"Q. And with a patient with an arrested case of tuberculosis can you tell the Board what would bring that condition back on him again?

"A. Anything that might lower his vitality for any reason at all might bring it back on; *his occupation might;* improper diet or an insufficient diet might, . . . . and it might well come on without any apparent cause at all.

"Q. Would hard physical labor have any effect?

"A. Hard physical labor might very well produce it. . . . .

"Q. The tuberculosis germ, as I understand it, is in the lung at all times but more or less encapsulated?

"A. Yes.

"Q. And if these encapsulations are ruptured it spreads the germs throughout the lungs?

"A. Yes.

"Q. And the rupturing, as you have stated, can take place from a great many causes?

"A. Anything that will diminish the resistance of the patient in relation to the rupturing of the capsule will probably result in the rupturing of these encapsulated areas or tubercules.

"Q. Would you say that the breathing of rock dust *would necessarily* rupture any of these encapsulated areas?

"A. I wouldn't think it would unless it produced the actual lowering of his vitality or produced an active change within the lungs, such as an active bronchitis. *Unless there is evidence of an active irritation being produced by these rock particles,* I wouldn't feel it was any major factor.

"Q. Would you say that if his tuberculosis developed suddenly about February, 1931, . . . . that if it were caused by the particles of rock being inhaled by him, that it would have been preceded by any other changed condition or sickness?

"A. I would think it would, yes.

"Q. What in your opinion would that be?

"A. Well, the train of symptoms which develop from inhalation of rock particles, if any develop at all, are characterized by cough and excessive expectoration and oftentimes difficulty in breathing on exertion, emphysema, we call it. . . . .

"Q. You refer to certain symptoms with reference to bronchitis and diseases of that nature resulting from irritation. I believe you said that the symptoms are principally coughing and expectoration?

"A. Yes."

It will be observed from a careful reading of the record that there is a positive statement on the part of the physicians called for claimant that the breathing of the silica dust was the underlying and proximate cause of the flaring up or lighting up of a dormant tuberculosis into an active incurable tuberculosis. The physicians called on behalf of respondents do not deny that the breathing of silica dust could bring about the result that physicians for claimant maintained in their testimony was brought about by breathing silica dust. We therefore have no conflict that the breathing of silica dust would lighten up the latent or dormant turberculosis with which claimant was afflicted. Claimant's physicians were in a better position to testify regarding the physical condition of the claimant than were the physicians for respondents, Dr. Boeck having made a thorough physical examination and Dr. Stalling having had claimant under observation. The rule would therefore seem to be that where the known facts are not equally significant, where there is ground for comparing and balancing their respective values, and, where the more probable conclusion is that for which the applicant contends, an inference in his favor is justified. Positive expert testimony will prevail over negative expert testimony. (*Womack v. New Orleans Public Service, Inc.*, 5 La. App. 71.) The expert testimony on behalf of claimant was of a positive nature, respondents' of a negative, if it be conceded that there is negative testimony on the material issue, namely: whether the breathing of silica dust rock by the claimant set up an irritation in his lungs and lighted up his tuberculosis. The evidence shows that up until February, 1931, claimant was in good health; that he first spit blood and his cough became more frequent in February, 1931; that after going to Utah in March he fell away in weight, lost his appetite, did not sleep, gradually grew weaker, had a hemorrage in July and later on, in October, was hopelessly ill. The evidence abundantly supports the conclusion that his con-

dition was brought about by the breathing of silica dust rock, which is admitted to be a form of dust, injurious to the lungs, soluble in the lungs, causing a coal-oil silica, which is a very good medium for the development of tuberculosis bacilli. It may be further observed that the symptoms that all the experts testified preceded and accompanied the development of tuberculosis in such a case were present in claimant's case, being of more pronounced character after February, 1931, and until the hearing. In harmony with the following authorities we have reached the conclusion that appellant's contention that there was no accidental injury cannot be upheld. (*Ramsay v. Sullivan Min. Co.*, 51 Ida. 366, 6 Pac. (2d) 856; *Sullivan Min. Co. v. Aschenbach*, 33 Fed. (2d) 1; *Reinoehl v. Hamacher Pole etc. Co.*, 51 Ida. 359, 6 Pac. (2d) 860; *In re Larson, supra; Tri-State Contractors v. Althouse*, 166 Okl. 296, 27 Pac. (2d) 1041; *Retmier v. Cruse*, 67 Ind. App. 192, 119 N. E. 32; *Glennon's Case*, 236 Mass. 542, 128 N. E. 942; *Republic Iron & Steel Co. v. Markiowicz*, 75 Ill. App. 57, 129 N. E. 710; *Knock v. Industrial Acc. Com.*, 200 Cal. 456, 253 Pac. 712.)

We are likewise unable to conclude that claimant did not bring himself within the latter provisions of I. C. A., sec. 43–1205, it being conclusively shown that the foremen under and with whom claimant worked had knowledge of the conditions under which he was employed; the fact that he was breathing rock dust; that he coughed as a result of breathing the rock dust; that his cough became worse; that he had a hemorrhage of the lungs; that he gradually grew physically weaker; that he lost weight, did not sleep, had no appetite, and, that one foreman assisted in making out claimant's claim. In such circumstances claimant brought himself well within the rule of the following authorities as to the sufficiency of notice under the statute, I. C. A., sec. 43–1205: *Crowley v. Idaho Industrial Training School*, 53 Ida. 606, 26 Pac. (2d) 180; *Page v. State Insurance Fund*, 53 Ida. 177, 22 Pac. (2d) 681.

■ Having reached the conclusion that there was not sufficient competent and substantial evidence to support the board's findings, and in the absence thereof its findings not being binding or conclusive either upon the trial court or upon this court (*In re Hilhouse,* 46 Ida. 730, 271 Pac. 459; *Larsen v. Blackwell,* 48 Ida. 136, 279 Pac. 1087; *In re Larson, supra*), it follows that the judgment of the trial court, entered upon the findings of fact and rulings of law of the board, must be set aside. The judgment of the district court is therefore reversed and the cause remanded, with instructions to direct the Industrial Accident Board to make and enter an award in favor of appellant. No costs allowed.

Givens, Holden and Wernette, JJ., concur.

Morgan, J., dissents.

ON REHEARING.

(February 18, 1935.)

AILSHIE, J.—In this case an opinion was filed on February 19, 1934. Thereafter a petition was filed by the respondents for a rehearing and a brief was filed in support thereof by attorneys for respondents, and also by Mr. Charles W. Beale, as *amicus curiae.* Later Mr. James E. Gyde, with leave of the court, filed rather an extensive brief as *amicus curiae,* as did also Mr. Ralph Nelson. After consideration of the petition and various briefs the court granted a rehearing. The case was thereafter orally argued. The court was not able to reach a final conclusion on the case prior to the expiration of the term of office of one of the sitting Justices, and an order was entered on January 23, 1935, resubmitting the case for consideration upon the record and briefs. The case was later assigned to the writer of this opinion.

■ The decisive question, which is urged both by the attorney for respondents and by the *amici curiae,* is that this court erred in holding that the employee was injured

as the result of an "accident" arising out of and in the course of his employment. It is argued that in order to constitute an "accident" within the meaning of the Workmen's Compensation Law, the incident or occurrence, which it is claimed constituted the "accident . . . . must have arisen from an event capable of being identified with respect to time, place and circumstances."

It is contended that the statements contained in the opinion that "he (the employee) was more or less bothered by coughing, which became more frequent as time passed," and that the ailment from which he died was "brought on by a series of irritations," extending through three or four months, each year from 1928 to October, 1931, definitely place the occurrence or injury, from which the employee died, outside the category of "accidents" as defined by the statute. If counsel are correct in their contention as above stated, then of course the original opinion of this court is erroneous.

We are consequently confronted with the duty at this time of further analyzing the circumstances as disclosed by the record and interpreting them within the spirit and purpose of the statute. The original opinion contains a very complete statement of the facts of the case and we shall not repeat or add to that statement except in so far as some particular matter may seem pertinent or important to such discussion as we may advance, in passing upon the issue tendered by the petition and briefs.

The peculiar facts of this case afford only another illustration of the old rule, that *each case* must be determined upon *its own set of facts and circumstances*. It is true as contended by the respective counsel that there is apparent authority for the contention made by each side. We feel, however, that an analysis of the situation, as it arose in the lifetime of the employee and attended him to the time of the hearing before the board, tends to simplify the case and place it upon one side or the other of the dividing line between the legal rights of the respective parties.

The decisive finding of the Industrial Accident Board upon which recovery was denied the employee is found in paragraph V of the board's findings of fact and is as follows:

"That no accident befell the Claimant while in the employ of the Defendant, Morrison-Knudsen Company; the reoccurrence of his tuberculosis being a gradual development, and there was no distinctive event or determinable unexpected happening during the course of his employment, nor any point or period of time marked by any unusual or distinctive event or occurrence."

As we read and understand the record before us, there is no evidence to support this finding. It is in reality more of a conclusion of law than finding of fact. We shall, however, make some observation hereinafter in regard to its correctness as a conclusion of law, "that no accident befell the Claimant."

Now, briefly considering the evidence, we think it indisputable that the employee had previously suffered from tuberculosis and that he had recovered to that state and condition where the lung lesions had healed and the tubercules were inclosed and in a dormant state; he had resumed his work and had been, and was, able to go about his business as any other workman could do. He had been carrying on his work with the Morrison-Knudsen Company from 1928 up to as late as October, 1931, without any apparent or serious difficulty except some spitting of blood and intermittent coughing between February and October, 1931.

The testimony of a tuberculosis expert and of claimant's physicians is all positive and affirmative, to the effect that inhaling silica dust during his period of employment with respondent was the direct and specific cause of reviving the latent tubercular condition of claimant's lungs and causing his breaking down from a fatal case of tuberculosis. The expert evidence on behalf of the employer was merely of a negative and doubting character. (See quotations in original opinion.) No one was able to testify as to the day or

month, or specific time, when the real injury was received or the fatal draught of dust was inhaled. This affords the real basis of respondent's contention that the injury here received was not an "accident" within the meaning of the statute but was rather more comparable to an occupational disease. We have, however, the testimony of the physician (a tuberculosis expert) that,

"This case is an unusual case . . . . This man . . . . who could work in October . . . . came to me hopelessly ill six weeks later—that is an unusual thing. As a rule you see these men go out gradually. . . . . He got his tuberculosis with cavity in February, and in October he was far advanced and hopelessly ill, but he had that period of seven or eight months that he was not so sick but what he could work. The thing blew up, all to pieces at once."

There is no substantial contradiction of this evidence and it must be accepted as a correct statement of the *time, certainty* and *nature* of the injury. As to the *cause* of the injury, it seems clear from the evidence that the inhalation of silica dust while working for the Morrison-Knudsen Company from 1928 to October, 1931, revived a latent tuberculosis condition in the employee's lungs, which in 1931 suddenly "lightened up," or as the physician says, "blew up, all to pieces at once," some time between February and October, 1931, and resulted in his death.

Now this brings us to the practical and crucial inquiry: When did the injury or "accident," if such occur? Was it between February and October when he "blew up" and went "all to pieces at once," or was it during the intervening months between his employment in 1928 and October, 1931, while he was inhaling the "siliceous atmosphere" at the company's works at various and intermittent periods of work on the rock crusher and in the hot plant? It does not seem to us that it makes any legal or rational difference as to which way this question is answered. The cause and result are both definite and certain. Had the workman not had a previous active attack of tuberculosis he would

not (in all reasonable probability,—say the experts) have suffered any ill results from inhalation of the silica dust. On the other hand, in the state of health he was in when he went to work for this company, still he would not likely have suffered any ill results had he not been working in the siliceous atmosphere. Had he worked only a few days, possibly a few weeks or months, and quit, he might not have suffered; but he remained on the job until he had to quit of a fatal case of tuberculosis. *He could not anticipate or foresee the result, neither could his employer.* Now who can in truth and fairness say this was not a compensable "accident"?

If a workman drives his employer's automobile for a couple of years until he wears the tires down to the inner tubes and suddenly a tire "blows out" and the car goes into the ditch and kills the workman, no one doubts but that an "accident" has occurred, although the rocks had been grinding on that tire for a couple of years. Now if silica dust grinds on a workman's lungs for many months, developing latent tuberculosis until his lungs give out (blow up) and he dies, is there any material difference in "the time, place and circumstances" of the accidents? Is not the one as much an "accident" as the other?

We are not unmindful of the fact that the words "injury" and "accident" are not synonymous terms as used in the statute under consideration. The facts of this case require a recognition of the distinction in meaning of these two terms. In the circumstances confronting us here it is not thought essential to a decision of the case that the court assert or attempt to decide just when and where the injury and result both merged into a consummated "accident." (*In re Larson*, 48 Ida. 136, 279 Pac. 1087, and cases cited.) All accidents are preceded by a cause,—in some cases that cause may have operated instantaneously and in others it may have been operating for days, months or years and ultimately the "accident" occurs,—the "blow out" (or "blow up") happens. A workman works on a given job for years

where he regularly has to lift a considerable weight; in the course of time his heart grows weaker and eventually he lifts a similar load and his heart fails and he dies; and the experts tell us that he overstrained himself in lifting the load, and we say it was an accident arising out of his employment. (*In re Larson, supra.*) Or it may impair or rupture some other part of the body so that the final effort at labor accomplishes the breakdown, and still we say it was an "accident." (*Hanson v. Independent School District 11-J,* 50 Ida. 81, 294 Pac. 513.) How different are such cases in principle from the one under consideration here?

In the case last above cited this court quoted with approval from *Springfield Dist. Coal Min. Co. v. Industrial Com.,* 300 Ill. 28, 132 N. E. 752, the following:

"If there is a pre-existing disease, the employee is entitled to recover for all the consequences attributable to the injury in the *acceleration* or *aggravation* of such disease. Such *aggravation* or *acceleration, permanent and progressive in its nature,* will entitle the employee to compensation to to the extent and in the proportion in which the pre-existing disease is increased or aggravated. Mere predisposing physical condition does not affect the right to compensation. If an accident results in a lesion or a new condition of which it is the proximate cause, there may be a recovery of compensation for the same, regardless of predisposing conditions making the employee more susceptible to the injury." (Italics ours.)

This court long since held that the Workmen's Compensation Act "is to be liberally construed with a view to effect its object and promote justice. . . . . It shall be so construed as to carry out its purpose and, so far as is reasonably possible, secure its benefits to all those who were intended to receive them." (*McNeil v. Panhandle Lumber Co.,* 34 Ida. 773, 203 Pac. 1068.) That rule has been consistently adhered to from the time it was announced down to the present time. (*Page v. State Insurance Fund,* 53 Ida. 177, 22 Pac. (2d) 681; *Riley v. City of Boise,* 54 Ida. 335, 31 Pac. (2d) 968.)

The federal court in considering cases under this statute is bound by the construction placed upon the statute by the highest court of the state. In recognition of that rule, after an analysis of our decision, the Circuit Court of Appeals for the Ninth Circuit in *Sullivan Min. Co. v. Aschenbach,* 33 Fed. (2d) 1, has said:

"In harmony with the conclusions reached in these cases, we infer it to be the view of the Idaho Supreme Court that to be accidental in contemplation of the Compensation Act it is not a prerequisite that the injury result from a sudden or violent cause or that the cause or agency be accidental or unexpected, but, as expressly stated by that court, 'a workman may be said to receive a personal injury by accident arising out of and in the course of his employment when, from the operation of known and usual causes, he receives an injury, neither expected nor designed.' The contention that to be accidental, the injury must result from a single, sudden occurrence was definitely rejected. Said the court: 'Now if the single pressing of the knee against the lever and the single striking of the knee by the lever would result in an injury by accident, can we say that the injury actually received was not caused by accident merely because there was a continuation of the cases that brought on the injury? The statute does not restrict compensation to an injury that results from a single event, and there would seem to be no sound reason for holding that an injury occasioned by a number or series of events is not within the act.' "

There are very few absolute certainties in damage litigation. (*Adams v. Bunker Hill etc. Min. Co.,* 12 Ida. 637, 89 Pac. 624, 11 L. R. A., N. S., 844; *Riley v. City of Boise,* 54 Ida. 335, 31 Pac. (2d) 968.) As said by Mr. Justice Cardoza in *Lewis v. Ocean Accident & Guarantee Corp.,* 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129):

"Here, as elsewhere, the law contents itself with probabilities, and declines to wait for certainty before drawing its conclusions."

So here we must act upon the most rational view that we can obtain of the case. In the light of our analysis of the facts and circumstances bearing upon the injury here involved, and the uniform purpose of this court to apply the law with a liberal construction in favor of compensating the injured workman, we are constrained to hold that in the case at bar the workman met with an "accident" in the course of his employment and was entitled to compensation.

Adverting again to the findings and conclusions of the Industrial Accident Board, we call attention to the fact that this is not a case where we have examined and weighed the evidence to determine its preponderance, but have rather reached the conclusion that there was no substantial evidence to support the findings of the board as hereinabove set out, and that as a conclusion of law, which the finding really amounted to, it was erroneous. The conclusion should have been reached that an accident occurred. What we have already said herein renders it unnecessary for us to discuss other questions presented by the petition and briefs.

In view of the conclusion we have above reached with reference to the evidence, it is clear that the board should have found in favor of the claimant, and for these reasons the judgment is reversed with directions to make findings of fact and conclusions of law in accordance with this opinion, and to remand the case to the Industrial Accident Board with instructions to enter judgment in favor of the claimant.

Costs awarded to appellant.

Budge and Holden, JJ., concur.

Givens, C. J., concurs in the conclusion reached.

MORGAN, J., Dissenting.—I dissent. While the evidence shows deceased died from tuberculosis of the lungs it does not show the tuberculosis, or his death, resulted from or was in any way contributed to by accident.