393 P.2d 594

Mary E. WELCH, Employee, Plaintiff-Appellant,

v.

SAFEWAY STORES, INC., Employer, and State Insurance Fund, Surety, Defendants-Respondents.

No. 9169.

Supreme Court of Idaho.

June 26, 1964.

Coughlan & Imhoff, Boise, for respondents.

Nixon & Nixon, Bonners Ferry, Richards, Haga & Eberle, Boise, for appellant.

McQUADE, Justice.

Plaintiff-appellant, Mary E. Welch, is hereinafter referred to as claimant. Defendant-respondent, State Insurance Fund, is hereinafter referred to as surety and the Industrial Accident Board as the Board. Defendant-respondent, Safeway Stores, Inc., is hereinafter referred to as Safeway.

On June 5, 1961, claimant petitioned the Board for compensation benefits. Claimant alleged that she had received a personal injury caused by an accident arising out of and in the course of her employment with Safeway, which employment was covered by the Workmen's Compensation Law.

Hearing on this claim was had at Sandpoint, Idaho, on June 16, 1961, and in Spokane, Washington, on October 17, 1961. The Board concluded that claimant had not met the burden of proof of an accident within the meaning of I.C. § 72–201 and I.C. § 72–1013 and denied the claim. Claimant takes her appeal to this court from the order of denial.

Claimant was born with a back defect and she has been troubled off and on with pains arising from this congenital anomaly since the age of twelve. In most instances, her discomfort from her abnormality has been relatively minor and has been closely associated with her menstrual periods.

Claimant graduated from high school in 1955 when she was 17 years of age. Following graduation she worked approximately one year for a cleaning establishment. Claimant testified at the hearing that, except for an occasional minor incident, she did not experience any back pain during this period.

From July 1956 through July 1957, claimant was employed as a waitress in an ice cream shop. Her duties entailed washing dishes, waiting tables and general restaurant service. Claimant's employer testified that claimant was an efficient, regular worker who never complained of back trouble.

Claimant was employed as a domestic from August 1957 through October 1957. At this employment claimant did general housework, consisting of cooking, cleaning and caring for children. Even though this work required occasional lifting, claimant's employer testified that claimant was an uncomplaining and efficient employee.

In August 1958 claimant, then 21 years old, was employed by the Bonners Ferry

Safeway Store as a checker. Her employment required her to stock shelves and to lift items from shopping carts. In order to perform her duties adequately in transferring items from shopping carts to the counter, claimant had to bend and twist her body.

At the hearing claimant's family physician testified that on August 1, 1959, claimant visited him with a complaint of pain in the right hip and the lower spine which was much worse at the time of her menstrual periods. These visits were repeated on the 31st of August and again in October with a similar history. In between her menstrual periods, claimant's condition would improve considerably. In January or February of 1960 and again in May 1960, claimant experienced pain in the lower part of her back and in her right hip. However, there was a difference in the type of pain involved:

"From August of 1959 I noticed more of the sharp pain in my back and leg, different than it had ever been before. When I was lifting things, especially, it would be a real sharp pain, where before it was a dull aching cramp that I had in my back."

Claimant saw her family doctor again on June 9, 1960. He reported at the hearing that her condition had become much worse and was no longer limited to the time of her menstrual periods. Claimant was in continual pain.

On June 21, 1960, claimant consulted with Dr. Jack B. Watkins, a specialist in orthopedic surgery, practicing in Spokane, Washington. Dr. Watkins was of the belief at this time that claimant's symptoms were originating from her congenital anomaly. He suggested conservative treatment consisting of B–12 shots to relieve the neuritis and referred claimant back to her private physican.

The following day, June 22, 1960, claimant notified Safeway through oral conversation with its manager, Robert Mayo, of the difficulties she was having with her back. She also asked for insurance forms at that time. On August 19 claimant formally notified Safeway of her injury. However, she wrote in her claim that she was unable to give the date on which her accident occurred. The Board received claimant's notice of injury and claim for compensation on September 7, 1960.

Claimant continued to work until September 19, 1960. However, her condition continually worsened. On September 21 she returned to Dr. Watkins and was hospitalized shortly thereafter. She was placed in traction in an attempt to relieve her pain, but this treatment had no effect.

On October 12 a myelogram was taken, which revealed a herniated disc located in claimant's back one level above the congenital defect. Surgical steps were taken to correct this condition, and on October 17 the herniated disc was removed and the vertebrae were fused.

Claimant was placed in a body cast following surgery. Her recovery was satisfactory until February 1961 when she began to develop more pain in her right leg. It was soon discovered that she had developed a pilonidal cyst which had become infected. After treatment of this, her symptoms gradually subsided and she began to improve again. However, in May 1961 she developed more pain and was once more admitted to a hospital and placed in traction. Following this hospitalization claimant again began to improve; however, at the time of the hearing held by the Board, she was still unable to return to her employment.

As noted earlier, the two statutes relevant to the problem presented herein are I.C. § 72–1013 and I.C. § 72–201. Their provisions are as follows:

"72–1013. Injury—Accident.—'Injury' or 'personal injury' includes death resulting from injury within two years after the accident but is not to be construed as being synonymous with accident. An 'injury' or 'personal injury' to be compensable must be the result of an accident."

"72–201. Right to compensation for injury.—If a workman receives personal injury caused by an accident arising out of and in the course of any employment covered by the Workmen's Compensation Law his employer or the surety shall pay compensation in the amounts and to the person or persons hereinafter specified.

" 'Accident,' as used in this law, means an unexpected, undesigned, and unlooked for mishap, or untoward event, happening suddenly and connected with the industry in which it occurs, and which can be definitely located as to time when and place where it occurred, causing an injury, as defined in this law.

"The terms 'injury' and 'personal injury,' as the same are used in this law, shall be construed to include only an injury caused by an accident, as above defined, which results in violence to the physical structure of the body. The said terms shall in no case be construed to include an occupational disease in any form and only such non-occupational diseases as result directly from an injury."

The Board, relying upon the above sections of the statutes, concluded in its ultimate finding and ruling of law that:

"Plaintiff, upon whom rested the burden of proof, failed to establish by a preponderance of the evidence that the herniation of her lumbar intervertebral disc resulted from an accident on the job. At no time during her two years of work for Safeway did she experience a sudden, unexpected mishap affecting her low back, which can be definitely located as to time when and place where it occurred."

Claimant contends that the Board erred in finding that I.C. § 72–201 and I.C. § 72–1013 require "a sudden, unexpected mishap * * * which can be definitely located as to time when and place where it occurred." In support of her contention claimant refers to such cases as McNeil v. Panhandle Lumber Co., 34 Idaho 773, 203 P. 1068 (1921), Aldrich v. Dole, 43 Idaho 30, 249 P. 87 (1926), Beaver v. Morrison-Knudsen Co., 55 Idaho 275, 41 P.2d 605, 97 A.L.R. 1399 (1934).

The Workmen's Compensation Law was adopted in 1917. It did not contain a definition of the term "accident." It therefore was left to the Idaho courts to determine what the legislature intended through its use of the term. The definition that eventually evolved appeared in McNeil v. Panhandle Lumber Co., supra, at page 781 of 34 Idaho, at page 1071 of 203 P. as follows:

"In the case of Fenton v. Thorley, [L.R.] English Appeal Cases 1903, p. 443, it said: 'That the expression "accident" is used in the popular and ordinary sense of the word as denoting an unlooked-for mishap or an untoward event which is not expected or designed.' "

See also: Aldrich v. Dole, supra; Reader v. Milwaukee Lumber Co., 47 Idaho 380, 275 P. 1114 (1929); In re Larson, 48 Idaho 136, 279 P. 1087 (1929); Reinoehl v. Hamacher Pole etc. Co., 51 Idaho 359, 6 P.2d 860 (1931); Ramsay v. Sullivan Min. Co., 51 Idaho 366, 6 P.2d 856 (1931); Riley v. Boise City, 54 Idaho 335, 31 P.2d 968 (1934); Beaver v. Morrison-Knudsen Co., supra; Leach v. Grangeville Highway Dist., 55 Idaho 307, 41 P.2d 618 (1935); Brown v. St. Joseph Lead Co., 60 Idaho 49, 87 P.2d 1000 (1938).

It may be, as claimant contends, that many of the above cases deal with situations which are factually similar to the case at hand. However, all of the aforementioned cases arose before 1939, the year in which the legislature adopted the definition set forth in the McNeil v. Panhandle Lumber Co. case and added the requirement that the mishap or event relied upon be "a sudden, unexpected mishap * * * which can be definitely located as to time when

and place where it occurred." See Pinson v. Minidoka Highway Dist., 61 Idaho 731, 106 P.2d 1020 (1940).

Claimant also directs attention to a number of cases from different jurisdictions. In each instance, however, the cases have arisen under statutory provisions materially different from those existing in Idaho. In most jurisdictions the term "accident" is defined by the courts and no statutory definition is attempted. 4 Schneider, Workmen's Compensation Law, § 1240 (1945).

We therefore hold that the Board was correct in its ultimate finding and ruling of law that I.C. § 72–201 and I.C. § 72–1013 require "a sudden, unexpected mishap * * * which can be definitely located as to time when and place where it occurred," and that claimant failed to meet such requisite burden of proof.

Claimant next contends that she did locate the time of her "accident" with sufficient definiteness to entitle her to compensation. Her argument is based upon the following quotation from 1 Larson, Workmen's Compensation Law, § 39.00 (1952):

"Most jurisdictions will regard the time of accident as sufficiently definite if either the cause is reasonably limited in time or the result materializes at an identifiable point. In the absence of definiteness in time of either cause or effect, as when repeated impacts or inhalations gradually produce disability, many courts find accident by treating each impact or inhalation as a separate accident."

Claimant reasons from the above that the time is sufficiently definite if (1) the cause is reasonably limited in time or (2) if the result materializes at an identifiable point. She further asserts that if the cause and effect both are gradual, we should (3) find an accident by treating each impact or inhalation as a miniature accident in itself, leading ultimately to disability.

Claimant's number (3) is not applicable to the situation presented herein. There are no "impacts" or "inhalations" in this case.

There is authority to the effect that claimant's argument does not apply to this type of factual situation. In Carlson v. Batts, 69 Idaho 456, 207 P.2d 1023 (1949), claimant Carlson gradually developed bursitis from working as a carpenter. His attending physician attributed his injury to persistent and continuous bruising while working on his knees. Carlson attempted to raise an argument similar to claimant's number (3) in this case. Much reliance was placed upon Aldrich v. Dole, supra, in which claimant's knee had been repeatedly struck by the gearshift of a truck, and Brown v. St. Joseph Lead Co., supra, in which claimant developed silicosis. The

court rejected Carlson's argument, however, on the theory that it was only applicable to situations where the agency causing the injury is active and external.

■ Claimant also contends that she has reasonably limited in time both the cause and the result of her accident. This, however, was a factual matter for the Board to determine and the evidence is overwhelmingly in support of the Board's finding that the claimant's herniation was a progressive affair with degeneration of the disc over a period of time. At some unidentifiable time claimant's back was injured; at yet another unidentifiable time the effect of such injury began to make itself known. In relation thereto, claimant's statement made in late August or early September 1960 is quite definite:

> "I cannot think of any specific time or place when my back could have become injured in this way. * * * I do believe my work at Safeway and the heavy lifting involved at the 'check stand' could have undoubtedly aggravated my back condition. But as to a specific time and place for a trauma I cannot give one."

The order of the Board is affirmed.

No costs allowed.

KNUDSON, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.