327 P.2d 383

**Ralph H. WHIPPLE, Claimant-Respondent,**

**v.**

**Howard K. BRUNDAGE, dba Brundage Transfer, Employer, and Argonaut Underwriters Insurance Company, Surety, Defendants-Appellants.**

No. 8615.

Supreme Court of Idaho.

June 27, 1958.

Paul C. Keeton, Lewiston, for respondent.

Wm. M. Smith, Boise, for appellants.

McQUADE, Justice.

The only issue presented by this appeal, according to the specifications of error, is whether

"The board erred in ruling that ordinary work, the causative factor of an injury, is an accident * * *."

This appeal is taken from an award made to the respondent for a posterior basal myocardial infarction which he suffered while in the course of his employment. There is no question on appeal as to the respondent's suffering an injury, and that the injury arose during the course of his emploment.

Howard K. Brundage was doing business as Brundage Transfer at Orofino in Clearwater County, Idaho, this being covered employment under the Workmen's Compensation Law of Idaho. Brundage was engaged in a general transfer business, hauling coal and lumber and moving household goods within a 100-mile radius of Orofino. He also had a garbage disposal service and a grocery delivery service. During the term of the public schools, Brundage furnished drivers for 12 school-owned buses.

Among Brundage's employees on February 4, 1957, was Ralph Whipple, 43 years of age. Respondent had been steadily employed by Brundage for a period of more than three years prior to his injury. His regular job was on a garbage disposal and grocery delivery, and during the school term on school days he drove a 60-passenger school bus twice a day, each trip requiring from an hour to an hour and a quarter.

The bus route which Whipple took twice a day was called the Harmony Heights run, and involved a round trip of about 20 miles. After leaving Orofino, the route traversed an oiled highway four or five miles up Orofino Creek, and then ascended a fairly steep

grade on a narrow, winding, graveled county road; it looped around and over a ridge, and descended back to the oiled road, and then returned to Orofino.

On Monday morning, February 4, 1957, in and around Orofino, there was a new snowfall of four or five inches, which was in addition to heavy snow from previous storms.

Respondent got up as usual about 6 a. m., ate breakfast, dressed in warm clothing, and left home sufficiently early to allow the installation of chains on the bus before starting on his run. The preliminary work required putting gas in the bus, shoveling snow away from the rear wheels to facilitate putting on the chains, and thereafter installing the chains. The respondent testified inasmuch as the bus had not been moved, the tires were dry and that it was much harder to put the chains on under those conditions than after the tires had become wet.

After readying the vehicle, respondent drove over the paved road and started up the grade on the graveled mountain road, which had not been plowed out that morning. The temperature was at or near freezing, and made driving extremely difficult due to the snow, ice, and rutted condition of the mountain road, and these conditions were made more difficult as the bus was empty, causing the rear end to slide around in the roadway.

Brundage testified:

"  *   *   *   We had had tough roads for two or three weeks, the worst roads we have had since I operated the busses.   *   *   *."

The respondent testified the bus was tough to handle, requiring the turning of the steering wheel a lot, and that he had to concentrate on what he was doing every second.

After traversing about one-quarter of a mile on the mountain road, respondent was seized with a cough, and immediately experienced a severe pain in his chest, and broke out in cold sweat. He continued to drive on up the mountain, but felt progressively worse, and after picking up some older students he had one of the boys finish driving the route into Orofino.

Immediately after the injury, respondent was hospitalized for about 30 days, after which he was not permitted to perform work which would produce fatigue, effort, shortness of breath or angina. Respondent's injury was diagnosed by his doctor as a posterior basal myocardial infarction.

The Industrial Accident Board ruled as a matter of law that the precipitation of respondent's injury of February 4, 1957, a myocardial infarction, was due to an acci-

dent arising out of and in the course of his covered employment, and it was therefore compensable under the Workmen's Compensation Law.

The question presented is whether an accident occurred according to the statutes of the State of Idaho covering workmen's compensation. I.C. sec. 72-201 provides:

> "If a workman receives personal injury caused by an accident arising out of and in the course of any employment covered by the Workmen's Compensation Law his employer or the surety shall pay compensation in the amounts and to the person or persons hereinafter specified.

> "'Accident,' as used in this law, means an unexpected, undesigned, and unlooked for mishap, or untoward event, happening suddenly and connected with the industry in which it occurs, and which can be definitely located as to time when and place where it occurred, causing an injury, as defined in this law. * * *"

Although the same question was presented in Harding v. Idaho Department Store, Idaho, 326 P.2d 992, under different facts, the same principle of law is applicable, and therefore the same language used therein is adopted herein:

The leading case in Idaho is Pinson v. Minidoka Highway District, 61 Idaho 731, 106 P.2d 1020, 1023. Pinson, a 60-year-old highway worker, was operating a jack hammer when it became stuck. He attempted to remove it, and the strain ruptured a blood vessel in his brain. The Court held this was an accident within the meaning of I.C.A. sec. 43-1001 (the same definition is carried over in I.C. sec. 72-201, supra). The Court said:

> "Appellants' remaining contention is * * * that there was no accident because the deceased was doing the work he expected to do and in the manner contemplated; that since it is not an unusual occurrence for a drill to become caught or stuck, there can be no 'accident' in the absence of a fall, a slip, or a stumble on the part of the workman or a breakdown on the part of the machinery operated by him. To constitute an 'accident' it is not necessary that the workman slip or fall or that the machinery fail. An 'accident' occurs in doing what the workman habitually does if any unexpected, undesigned, unlooked-for or untoward event or mishap, connected with or growing out of the employment, takes place. Hieronymus v. Stone's Food Stores, Inc., 60 Idaho 727, 96 P.2d 435; Cook v. Winget, 60 Idaho 561, 94 P.2d 676; In re Larson, 48 Idaho 136, 279 P. 1087; Aldrich v. Dole, 43 Idaho 30, 249 P. 87; McNeil v. Panhandle Lumber Co., 34 Idaho 773, 203 P. 1068. * * *"

The definition of "accident" is further developed, and the question very learnedly disposed of, in Lewis v. Department of Law Enforcement, 79 Idaho 40, 311 P.2d 976, 978. Therein it was said:

"* * * It is unnecessary that the claimant be engaged in some unusual work or that there be a slipping, falling or some sudden or violent accident preceding the injury before it is compensable. If the claimant be engaged in his ordinary, usual work and the strain of such labor becomes sufficient to overcome the resistance of claimant's body and causes an injury, such injury is compensable. And although the claimant was suffering from a pre-existing defect such as an aneurysm, if the strain aggravates and accelerates the condition and causes or contributes to the injury, such injury is compensable." (Citing cases.)

The order of the Industrial Accident Board making an award to the respondent is affirmed.

Costs to respondent.

PORTER and TAYLOR, JJ., and SPEAR and DUNLAP, District Judges, concur.

KEETON, C. J., and SMITH, J., not participating.