415 P.2d 301

Kathleen GJERNING, Surviving Widow of Marvin Woodrow Gjerning, Claimant-Respondent,

v.

POTLATCH FORESTS, INC. (TWIN FEATHER MILLS UNIT) and Workmen's Compensation Exchange, Defendants-Appellants.

No. 9778.

Supreme Court of Idaho.

June 10, 1966.

Blake, Givens & Feeney, Lewiston, for appellants.

Swayne & McNichols, Orofino, for respondent.

McQUADE, Justice.

This appeal is from an Industrial Accident Board award of death benefits to the minor children of Marvin W. Gjerning, deceased. The Board found that Gjerning's death, as a medical probability, "was precipitated by an accidental electric shock causing cardiac arrest of a failing heart weakened by pre-existing disease." The Board attributed one-half of the deceased's death to his preexisting heart disease and one-half to the electric shock incurred while in the performance of his duties and entered its award accordingly. I.C. § 72–323 (Supp.1965).[1] Appellants urge on the appeal the insufficiency of the evidence to sustain the Board's finding that Gjerning suffered an electric shock which contributed to his death.

The circumstances surrounding Gjerning's death are as follows: Gjerning was employed by Potlatch Forests, Inc., as an electrician at its Twin Feathers Mill in Kamiah, Idaho. On September 28, 1964, Gjerning was summoned to repair a faulty valve on a machine which controlled the flow of lumber in the mill. Connected to this valve were air hoses and electrical wires. While other workers disconnected the air hoses, Gjerning went to the electrician's room to obtain a new valve to replace the defective one. In going to the electrician's room Gjerning had to walk approximately 135 feet and down a 16-step ladder. He returned to the machine by

1. "72–323. * * * If death following an accident is contributed to by any condition or infirmity which existed prior to the date of injury, the board shall determine to what extent such condition or infirmity contributed to the death. The total benefits payable for accidental death shall be reduced accordingly."

16

the same route. Upon returning, Gjerning removed a plastic cover from the wires leading into the valve and began changing the wires in the valve. While doing so, a co-employee, Mr. Smith, noticed that Gjerning was pretty shaky and asked him if the "juice" was off. Smith then testified that Gjerning:

"* * * more or less turned his head sideways and noticed the position of the tail sawyer and he said, one of those buttons or switches in the box—he said go run your tail sawyer the other way or close it to a closed position. So then I went in the box—I imagine it is 15 feet you have to go to the side of the box and into the door—through a door, probably 15 feet, so I went in there and hit the button and closed the apparatus and when I come back out he was laid over."

Smith was then asked:

"Q. The button that you pushed and the resultant movement of the machine, did that mean that there was electricity flowing to the point where Mr. Gjerning was prior to the time you pushed the button?"

He replied, "I would assume that."

■ Thus, the evidence that Gjerning received an electric shock from the exposed wires is largely circumstantial. This, however, does not preclude the Board from finding as it did, that Gjerning received an electric shock. He was, at the time of his death, working on exposed electrical wires which, from the evidence, were *probably* charged with electrical current. Where, as here, the more probable, though not absolutely certain, conclusion supports the contention of the claimant, an inference in her favor is justified. Beaver v. Morrison-Knudsen Co., 55 Idaho 275, 41 P.2d 605, 97 A.L.R. 1399 (1934). "Here, as elsewhere, the law contents itself with

probabilities, and declines to wait for certainty before drawing its conclusions." (Taken from Lewis v. Ocean Accident & Guarantee Corp., 224 N.Y. 18, 120 N.E. 56, 7 A.L.R. 1129.) 55 Idaho at 297, 41 P.2d at 614. "The determination of questions of fact is for the board and a finding supported by either positive evidence or logically inferred from circumstances will not be disturbed." Butler v. Anaconda Copper Min. Co., 46 Idaho 326 at 331, 268 P. 6 (1928). "[I]f reasonable men could draw different inferences from the evidence then the findings of the board are conclusive and final, even though the court might draw a different inference." Vaughn v. Robertson & Thomas, 54 Idaho 138 at 144, 29 P.2d 756 (1934). "'All reasonable inferences drawn by the triers of the facts from the evidence will be sustained on review.' Phelps Dodge Corporation v. DeWitt, Ariz., 63 Ariz. 379, 162 P.2d 605, 609." Smith v. University of Idaho, 67 Idaho 22 at 31, 170 P.2d 404, 410 (1946).

■ We, therefore, hold that there was sufficient evidence from which the Board could find that Gjerning received an electric shock which precipitated his death.

■ Appellants also contend that the Board erred in considering incompetent hearsay evidence and on such evidence based its finding that Gjerning died from the electric shock. Conceding such to be the fact, a reversal is not required where there is sufficient competent evidence to sustain the finding. Butler v. Anaconda Copper Min. Co., supra. As stated above, there was other sufficient and competent evidence to sustain the Board's finding.

The judgment is affirmed.

Costs to respondent.

McFADDEN, C. J., and TAYLOR, SMITH and SPEAR, JJ., concur.