608 P.2d 877

**Vernald R. LOGSDON, Claimant-Respondent,**

v.

**NORTHERN IRON & METALS COMPANY, Employer, Defendant,**

and

**State Insurance Fund, Surety, Defendant-Appellant.**

No. 13150.

Supreme Court of Idaho.

April 3, 1980.

Paul S. Boyd, Boise, for defendant-appellant.

Ralph J. Gines, Boise, for claimant-respondent.

PER CURIAM.

Claimant-respondent Vernon R. Logsdon was injured on April 6, 1977. He verbally notified his employer immediately, and later filed a timely notice of injury and claim for workmen's compensation benefits. After the employer and surety denied his claim he applied for a hearing to the Industrial Commission, which entered its findings of fact and conclusions of law on August 26, 1978, and ordered the employer and surety to pay benefits. The employer and surety then filed a motion for reconsideration, and after hearing, the Commission affirmed its earlier decision, entering replacement findings of fact and conclusions of law. The Commission's decision resolved only the issue of the employer's and surety's duty to pay workmen's compensation benefits, leaving for later proceedings a determination of the actual amount of those benefits. Pursuant to I.A.R. 12, the Industrial Commission then certified that there was substantial basis for difference of opinion as to a controlling issue of law, and that an appeal to the Supreme Court of the question whether Logsdon's injuries arose out of and in the course of his employment would materially advance the orderly resolution of the litigation. The court entered an order certifying the Commission's order as appealable and employer and surety filed timely notice of appeal.

The Industrial Commission's detailed findings indicate that on the date of his injury Logsdon had been employed as a truck driver for Northern Iron & Metals Company of Boise for about two weeks. He was instructed to deliver a load of scrap metal in Salt Lake City, using the company's truck and forty foot trailer. The employer specified a route to Salt Lake City and gave Logsdon directions to the scrap metal yard. He drove there without incident.

Before Logsdon commenced his employment he had discussed with Northern Iron the possibility of obtaining a winch to place on his own pickup truck, with which he would haul old vehicles to the Northern Iron scrapyard for compensation. Before Logsdon left for Salt Lake City he suggested that he try to locate a suitable winch there and asked whether he could use the employer's truck to bring it back. The employer assented. At the scrapyard in Salt Lake City Logsdon did find a winch and had it loaded on the empty trailer for the return trip to Boise.

Logsdon had been instructed to return through Wendover, Utah, where he was to pick up a load of rock salt. In Wendover, the winch was removed from the truck bed with a forklift, and the pallets and salt were loaded. During loading, a few of the salt sacks were torn and extra sacks were loaded individually as replacement. After loading there was a three-foot space at the rear of the truck bed, and the winch was reloaded into this space. Logsdon then set out for Boise, arriving at about 4:00 a. m. He proceeded directly to his home, which was some four blocks from the Northern Iron yards, and went to bed. He parked the truck there, apparently for at least two

reasons: first, he had been driving for some ten hours, and federal regulations required him to rest for eight hours before driving the truck again; second, he did not have keys to the employer's locked scrapyard, and had previously been ordered not to leave company trucks parked outside the yard. Logsdon had been told to call his employer upon arriving in Boise, but had been given no specific instructions regarding arrival at such a late hour. He was unaware that the employer had urgent plans for making a delivery of the salt early that morning.

At 8:00 a. m. the next morning Logsdon awoke, and with his wife unloaded the winch, and began rearranging the load of salt, which had shifted in transit, and cleaning up the debris from the broken sacks. He stopped for breakfast, and returned to the job at about 11:00 a. m. While he was restacking the sacks, Logsdon fell from the rear of the truck and suffered the injuries which are the subject of this action.

Despite the employer's argument that Logsdon had violated instructions in taking the truck to his home, the Industrial Commission found no such violation. In any case, the Commission concluded that the deviation from the assigned route was so small as to be insubstantial, that Logsdon was furthering his employer's interest by stacking the sacks, which was necessary for unloading by forklift, and that the deviation or violation of instructions, if they occurred, were not the cause of the injuries. The Commission therefore concluded that Logsdon's injuries "arose out of and in the course of his employment" and that he was entitled to workmen's compensation benefits. On appeal the surety, State Insurance Fund, challenges this decision.

It is axiomatic this court will not disturb the Industrial Commission's findings of fact when they are supported by competent, although conflicting, evidence. *Hamby v. Simplot Co.*, 94 Idaho 794, 498 P.2d 1267 (1972); *Madron v. Green Giant Co.*, 94 Idaho 747, 497 P.2d 1048 (1972). Such evidence existed in this case, and we agree that the Industrial Commission's conclusions of law correctly flowed from its findings of fact.

The Commission's order is affirmed. Costs to respondent. No attorney fees on appeal.